# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

July 6, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MAXUM PETROLEUM OPERATING COMPANY,**
**Employer Below, Petitioner**

**vs.)    No. 16-0741** (BOR Appeal No. 2051075)
                          (Claim No. 2012031045)

**CLINE WAUGH,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Maxum Petroleum Operating Company[1], by Jeffrey M. Carder and Jeffrey B. Brannon, its attorneys, appeals the decision of the West Virginia Workers' Compensation Board of Review.

The issue on appeal is the percentage of permanent partial disability Mr. Waugh has due to his compensable injury. On October 10, 2013, the claims administrator granted an award of 0% permanent partial disability. The Office of Judges affirmed the decision in its January 5, 2016, Order. The Order was reversed and vacated by the Board of Review on June 30, 2016. The Board remanded to the claims administrator to schedule another independent medical evaluation to assess impairment. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon an erroneous conclusion of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

---

[1] The name of the employer in the documents provided to us differs from the name of the employer in the documents provided to the Board of Review and Office of Judges.

1

Mr. Waugh, an over-the-road truck driver, alleged he developed carpal tunnel syndrome as the result of his work activities on July 2, 2009. Mr. Waugh stopped working in July of 2008, due to a knee injury. The first time he sought medical treatment for his upper extremities was in July of 2009. The claims administrator held the claim compensable.[2]

On September 30, 2013, Paul Bachwitt, M.D., performed an independent medical evaluation. Mr. Waugh stated he developed pain and numbness in both hands due to his work as an over-the-road truck driver for approximately twenty years. His job duties included inspecting and loading equipment, walking, using both hands to open valves, pushing and pulling hoses, and completing paperwork. He was first evaluated for complaints related to his hands on July 6, 2009. At that time he had not been working for eight or nine months due to low back and left knee pain. An EMG and NCV testing performed on both hands on September 4, 2009, revealed moderate carpal tunnel syndrome. In Dr. Bachwitt's opinion, it would have been virtually impossible for Mr. Waugh to have developed carpal tunnel syndrome due to his work. In his opinion, Mr. Waugh's complaints were due to his morbid obesity, depression, chronic low back pain, hypertension, cardiac arrhythmia, and hyperlipidemia. Dr. Bachwitt assessed 0% impairment. On September 10, 2013, the claims administrator awarded Mr. Waugh 0% permanent partial disability based on Dr. Bachwitt's report.

Bruce Guberman, M.D., performed an independent medical evaluation on October 14, 2014. Mr. Waugh provided a history of numbness, tingling, and pain in his hands since 2005 or 2006. At the time of the evaluation, Mr. Waugh noted intermittent numbness and tingling in both hands off and on throughout the day and weakness. While working as a truck driver, he had to use his hands to steer, shift gears, unload trucks, hook up hoses, and use large wrenches. Dr. Guberman diagnosed bilateral carpal tunnel syndrome and assessed 11% impairment for each upper extremity. Dr. Guberman attributed 2% of 11% impairment to non-occupational factors. Dr. Guberman then combined the 9% impairment for each upper extremity due to occupational factors for a total of 17% whole person impairment.

On July 21, 2015, Prasadarao Mukkamala, M.D., performed an independent medical evaluation. At that time, Mr. Waugh complained of cramps in both hands and sometimes numbness and tingling in both upper extremities. He reported having had the symptoms in both arms for five or six years. Dr. Mukkamala diagnosed carpal tunnel syndrome and assessed 7% impairment for each upper extremity, which combined for 14% whole person impairment. In Dr. Mukkamala's opinion, the carpal tunnel syndrome was not related to the work activities because at the time Mr. Waugh was diagnosed with carpal tunnel syndrome, he had not been working for one year, and Mr. Waugh stated his symptoms got worse after he stopped working. If the carpal tunnel syndrome had been work related, the symptoms would have subsided after he quit working. Additionally, Mr. Waugh had very significant non-occupational risk factors for the development of carpal tunnel syndrome, including being extremely obese. Dr. Mukkamala did not agree with the impairment rating assessed by Dr. Guberman due to the apportionment he used.

---

[2] The compensability decision of the claims administrator is not in evidence.

Marsha Bailey, M.D., performed an independent medical evaluation on August 18, 2015. At that time, Mr. Waugh's most significant complaint was that he dropped items with his right hand once or twice a day. He also complained of numbness and pain in both hands, as well as having night awakenings due to the pain and numbness. Dr. Bailey diagnosed carpal tunnel syndrome. In her opinion, Mr. Waugh's carpal tunnel syndrome was attributable to his long standing morbid obesity. Mr. Waugh did not have occupational responsibilities that were highly repetitious, highly forceful, or extremely awkward that would place him at risk for carpal tunnel syndrome. Dr. Bailey assessed 10% impairment for both upper extremities. However, using West Virginia Code of State Rules §85-20 (2006), she decreased the impairment for each upper extremity to 6% for a combined total of 12% impairment. She apportioned the entire 12% impairment rating to Mr. Waugh's non-occupational risk factors including his morbid obesity. In her opinion, Dr. Guberman's assessment of impairment is incorrect because he failed to use West Virginia Code of State Rules §85-20-64 in making his final assessment of impairment and because he failed to apportion the impairment properly.

The Office of Judges affirmed the claims administrator's October 10, 2013, award of 0% permanent partial disability on January 5, 2016. The Office of Judges noted that carpal tunnel syndrome impairment is determined by applying the criteria in the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) and then adjusting that impairment to the ranges found in West Virginia Code of State Rules §85-20. The Office of Judges also found that Mr. Waugh's significant obesity could not be ignored. Additionally, his symptoms did not appear until 2009, approximately one year after he stopped working. Those factors did not support a disability due to occupational reasons.

The Office of Judges found that the reports of Drs. Bachwitt, Mukkamala, and Bailey were much more credible in their impairment assessments than that of Dr. Guberman. Drs. Bailey and Mukkamala attributed the impairment to non-occupational factors. Dr. Guberman only apportioned 2% to the non-occupational factors. The Office of Judges found this to be unreliable, as Mr. Waugh had weighed in at over 500 pounds at one point in time. The Office of Judges concluded that no permanent partial disability for the carpal tunnel syndrome could be attributed to Mr. Waugh's employment.

The Board of Review adopted the findings of fact of the Office of Judges, but found its analysis and conclusions were affected by an error of law and were clearly wrong in view of the entire evidentiary record. The Board of Review noted the issue at hand was the amount of permanent impairment Mr. Waugh suffered as a result of his compensable diagnosis of bilateral carpal tunnel syndrome. It found that none of the medical reports accurately represented the amount of whole person impairment arising from the compensable bilateral carpal tunnel syndrome. The Board of Review found Dr. Bachwitt' s opinion unreliable as he did not believe Mr. Waugh had carpal tunnel syndrome. It found Dr. Guberman's opinion unreliable as he did not apply West Virginia Code of State Rules §85-20-64.5 in assessing impairment. It found Drs. Mukkamala and Bailey's opinions inaccurate as they found Mr. Waugh had impairment, but apportioned it entirely to non-occupational risk factors because they did not believe the carpal tunnel syndrome was causally related to his occupational activities. The Board of Review then noted that permanent partial disability awards are to be based solely on the basis of the

3

physician's impairment evaluation and that portions of reports from different physicians could not be combined to create impairment. Based on that reasoning, the Board of Review reversed and vacated the Office of Judges, Order. It then remanded the claim to the claims administrator for a referral to an additional independent medical evaluation and the entry of a new protestable decision regarding Mr. Waugh's permanent partial disability based on that independent medical evaluation.

After review, we disagree with the Board of Review. Mr. Waugh has undergone at least four independent medical evaluations, as shown by the evidentiary record. The claim had been held compensable for bilateral carpal tunnel syndrome prior to these evaluations. Of the four physicians assessing impairment, Dr. Bailey was the only physician who assessed Mr. Waugh's impairment according to the AMA *Guides*, utilized West Virginia Code of State Rules §85-20 to limit the impairment, and then apportioned the impairment between occupational and non-occupational factors. She determined that the non-occupational factors outweighed the occupational factors, and apportioned the entire impairment to the non-occupational factors. The Board of Review's assertion that Dr. Bailey "apportioned all of the impairment to non-occupational risk factors because they are of the opinion that the claimant's carpal tunnel syndrome is not causally related to his occupational activities", is incorrect. Dr. Bailey's opinion was based on reliable evidence and the weighing of factors between the occupational and non-occupational factors. She determined that the non-occupational factors contributed more than the occupational factors. That determination does not seem incorrect as Mr. Waugh has continued to experience symptoms even though he has not worked for nine years. The Office of Judges' reliance on Dr. Bailey's opinion regarding impairment was not misplaced.

For the foregoing reasons, we find that the decision of the Board of Review is based upon and erroneous conclusion of law. Therefore, the decision of the Board of Review is reversed and remanded with instructions to reinstate the Office of Judges January 5, 2016, Order.

Reversed and remanded.

**ISSUED: July 6, 2017**


**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Elizabeth D. Walker


**DISSENTING**:
Justice Margaret L. Workman
Justice Menis E. Ketchum

4